OPINION
Appellant, James D. Cline, appeals from his conviction in the Lake County Court of Common Pleas on one count of failure to comply with an order or signal of a police officer, with a further finding that the commission of the offense caused a substantial risk of serious physical harm to persons or property, a fourth degree felony, in violation of R.C. 2921.333(B). The following facts are relevant to a determination of this appeal.
On the evening of April 13, 1998, appellant and his friend, Andrew Ryant, stopped at a tavern in Kirtland, Ohio for some drinks. According to appellant, when they left the tavern, Ryant was driving and appellant was in the passenger seat of appellant's girlfriend's pickup truck. As they were approaching appellant's residence in Willoughby Hills, appellant noticed two police cars parked at an area known as "the triangle" where three streets converged on the border of Willoughby Hills and Waite Hill.
Appellant claimed that he became nervous upon seeing the police officers because he knew that there was an outstanding warrant for his arrest. Thus, he alleged that he ducked down in the seat to avoid detection. Ryant supported appellant's version of the foregoing events and added that he, too, was nervous because of an outstanding warrant forhis arrest.
The two police officers claimed that they recognized the truck as belonging to appellant's girlfriend. Officer Keith A. DeWitt of the Waite Hill Police Department recognized the truck first, and also recognized the driver as appellant. He did not see anyone else in the truck. Patrolman Craig Anderson of the Willoughby Hills Police Department recognized the truck as it passed, but did not notice who was driving. Believing that the driver was appellant, and knowing that there was an outstanding warrant for his arrest, both officers began pursuit in their patrol cars. Instead of stopping, the driver of the truck tried to get away. A video camera mounted on the dashboard of Patrolman Anderson's cruiser recorded the brief pursuit.
The pickup truck accelerated to approximately fifty m.p.h. in a posted twenty-five m.p.h. zone. The two-lane roads were "tar and chip" with patchy, loose gravel. They were outlined with ditches and no curbs or sidewalks in this residential area. Street lighting was scarce. The chase lasted less than one minute, and the truck failed to stop at one stop sign. There was no other traffic on the road nor were there any pedestrians in view during the pursuit.
The chase ended when the truck pulled into the driveway at appellant's residence. Both police officers observed only one suspect flee the truck and run into the house, ignoring their orders to stop. The suspect exited the truck from the driver's side door. Officer DeWitt claimed that the suspect he observed entering the house was appellant.
Appellant's girlfriend, Karen Hensley, was at appellant's residence on the evening of April 13, 1998, when she heard the police sirens. She claimed that both appellant and Ryant came "barreling" through the back door. They explained what the commotion was about and stated that Ryant had been driving the truck.
The police officers knocked on the door of the house, but there was no response. They proceeded to have the pickup truck impounded. Upon his return to the police station, Patrolman Anderson received a telephone call from appellant. Appellant stated that he had not been driving the truck and had refused to exit the house because he did not want to go to jail. He told the officer that Ryant was the driver. He also refused the officer's request to come to the police station and make a written statement.
On November 9, 1998, appellant was indicted by the Lake County Grand Jury on one count of failure to comply with an order or signal of a police officer, commonly known as fleeing and eluding, in violation of R.C. 2921.331, a fourth degree felony. Appellant entered a plea of not guilty and the matter proceeded to a jury trial commencing March 8, 1999. At the close of the state's case-in-chief, appellant's counsel made a motion for acquittal pursuant to Crim.R. 29, which was overruled by the trial court. The motion was renewed at the close of the trial, but was once again overruled. Appellant was found guilty as charged. On May 27, 1999, appellant was sentenced to three years of community control and ninety days in the Lake County Jail.
Appellant timely filed a notice of appeal and has now set forth the following assignments of error:
 "1. The trial court erred to the prejudice of the defendant-appellant when it improperly limited the scope of his cross-examination of the state's key witness.
 "2. The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29.
 "3. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
In the first assignment of error, appellant contends that the trial court erred when it improperly limited the scope of his cross-examination of the state's key witness, Patrolman Anderson. Specifically, appellant sought to introduce evidence that Patrolman Anderson had received a telephone call from Lieutenant Thomas Doyle of the Eastlake Police Department informing Patrolman Anderson that he, Lt. Doyle, had received a written statement from Ryant admitting to driving the pickup truck during the pursuit. Lt. Doyle allegedly offered to send the statement to Patrolman Anderson but the officer said he was not interested. The trial court did not allow this line of questioning based upon its conclusion that this was hearsay upon hearsay. We agree.
Appellant argues that this was not hearsay because it was not offered to prove the truth of the matter asserted but, rather, it was offered to show bias on the part of Patrolman Anderson. Appellant claims that this was an indication of bias on Patrolman Anderson's part since it looked like an attempt to ignore evidence that contradicted Patrolman Anderson's belief that appellant was driving the truck during the pursuit.
It is clear that a witness may be impeached by showing bias. Evid.R. 616(A). However, like any other relevant evidence, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or of misleading the jury. Evid.R. 403(A).
In the case sub judice, this line of questioning was not relevant to the issue of bias because it did not make the existence of bias more or less probable. Patrolman Anderson testified earlier that appellant told him that Ryant was the driver of the pickup truck. Thus, what possible relevance could there have been in Patrolman Anderson admitting that another officer had informed him that Ryant had made a written statement confessing to the crime? Additionally, as the trial court pointed out, appellant could have brought in Lt. Doyle to testify. In fact, appellant did call Lt. Doyle as a witness and he confirmed the allegations made by appellant.
Thus, the minimal amount of probative value that this testimony would have provided was clearly outweighed by the danger of misleading the jury. We agree with the trial court's assessment that defense counsel was merely attempting to introduce this evidence to prove the truth of the matter asserted through an exception to the hearsay rule. The trial court did not err in excluding this line of cross-examination. Appellant's first assignment of error is without merit.
In the second assignment of error, appellant asserts that the trial court erred when it denied his motion for acquittal made pursuant to Crim.R. 29. Specifically, appellant submits that the state failed to prove all the elements of the offense for which he was charged and, in particular, that the driver of the pickup truck posed a "substantial risk of serious physical harm to persons or property."
The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied. In State v. Bridgeman
(1978), 55 Ohio St.2d 261, the court held:
 "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus.
In State v. March (July 16, 1999), Lake App. No. 98-L-065, unreported, this court explained the appellate court's role in reviewing a challenge to the denial of a Crim.R. 29 motion. We stated:
 "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. Hence, a reviewing court must look to the evidence presented to the jury to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. See State v. York (May 1, 1998), Lake App. No. 97-L-037, unreported, at 7. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430-431." Id. at 7.
Applying this standard to the present case, the state was required to present sufficient evidence that appellant committed the offense of failure to comply with an order or signal of a police officer and,additionally, that the commission of the offense caused a substantial risk of serious physical harm to persons or property. See R.C. 2921.333(B). We conclude that a rational trier of fact could have found that appellant committed the offense beyond a reasonable doubt.
The only issue argued by appellant is whether the pursuit caused a substantial risk of serious physical harm to persons or property. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support the jury's conclusion. The pursuit occurred in a residential area, in the evening, in an area that was relatively dark, on a narrow road with a loose surface of tar and chips, and with ditches on either side of the road. While there was no traffic or pedestrians on the road at the time of the pursuit, Patrolman Anderson testified that it was not uncommon to see neighbors including children playing in yards, riding bicycles, or walking pets. Appellant was traveling fifty m.p.h. in a twenty-five m.p.h. zone on a road surface that did not offer much in the way of traction. Appellant made several turns at excessive speeds and ran a stop sign. Under these circumstances, and having reviewed the videotape of the pursuit that was offered into evidence, we must conclude that reasonable minds could well have arrived at the conclusion reached by the jury.
Based upon the foregoing analysis, the trial court did not err by denying appellant's motion for acquittal made pursuant to Crim.R. 29. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant submits that his conviction was against the manifest weight of the evidence. A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387. In State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11, we held:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) [t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' * * *." (Citations omitted and emphasis sic.)
 Thus, an appellate court sits as a "thirteenth juror" when reviewing a manifest weight challenge. State v. Salinas (1997), 124 Ohio App.3d 379, 391.
When this case is reviewed under the foregoing standard, it is clear that appellant's conviction was not against the manifest weight of the evidence. First, appellant claims that the state did not prove that he was the driver of the pickup truck. Here, the jury, as trier of fact, determined the weight and credibility of the witnesses. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Officer DeWitt, who knows appellant, testified that from a distance of approximately twenty to twenty-five feet he observed appellant driving the pickup truck on the night of the incident. Both officers also testified that they saw only one suspect fleeing from the vehicle, and the suspect fled from the driver's side door. Officer DeWitt identified that suspect as appellant. Additionally, the jury had the opportunity to view both possible drivers at trial, one of whom was significantly larger than the other, which would have made confusion between the two men improbable. The testimony directly contradicted the self-serving testimony offered by appellant and his girlfriend. Under these circumstances, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice.
Under this assignment of error, appellant also argues that the state did not prove that the operation of the pickup truck caused a substantial risk of serious harm to persons or property. We disagree. The evidence simply does not weigh heavily against this conclusion. Appellant was driving a pickup truck at a relatively high rate of speed on poor road conditions, taking corners too fast, and running a stop sign, through a residential area during evening hours. There was the potential to cause grave physical harm to people or severe damage to homes, vehicles, or other assorted property in people's yards. Driving fast on a narrow two-lane road with a loose surface is an invitation for disaster. The fact that a disaster did not occur in this case does not lessen the risk that appellant created.
Appellant's conviction was not against the manifest weight of the evidence. Appellant's third assignment of error is also without merit.
The judgment of the trial court is hereby affirmed.
 ____________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., MILLIGAN, J., Ret., Fifth Appellate District, sitting by assignment, concur.